UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

Rebecca Renae Westling,

Plaintiff,

v.

Commissioner of Social Security,

Defendant.

No. 1:25-cv-00057-JLT-GSA

**FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, TO DIRECT ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**

**(Doc. 16, 18)**

## I. Introduction

Plaintiff Rebecca Renae Westling seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her applications for social security disability insurance benefits (DIB) and supplemental security income (SSI) pursuant to Titles II and XVI of the Social Security Act. The matter is before the undersigned for issuance of Findings and Recommendations based on the parties' briefs. Docs. 16, 18. After reviewing the record the undersigned finds that substantial evidence and applicable law support the ALJ's decision and recommends that the Court direct entry of judgment in favor of Defendant, against Plaintiff, affirming the decision of the Commissioner of Social Security.

## II. Factual and Procedural Background

On September 28, 2021, Plaintiff applied for DIB and SSI alleging a disability onset date of August 19, 2021 due to gastroparesis, hypermobile Ehlers-Danlos syndrome, asthma, dermatitis, right conductive hearing loss w/left side unrestricted hearing, bipolar disorder, borderline personality disorder, psychogenic non-epilepsy seizures, arrythmia, and intense migraines. AR 120–21. The Commissioner denied the applications initially on June 6, 2022 (AR 174–75), and on reconsideration on December 13, 2022 (AR 236–37). A hearing was held before an ALJ on

December 5, 2023. AR 67–113. On February 20, 2024, the ALJ issued an unfavorable decision. AR 35–66. The Appeals Council denied review on September 25, 2024. AR 1–6.

## III. The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a

sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

## IV. <u>The ALJ's Decision</u>

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 19, 2021. AR 41. At step two, the ALJ found that Plaintiff had the following severe impairments:

> borderline personality disorder; conversion disorder with pseudo seizures/psychogenic seizures; posttraumatic stress disorder (PTSD); generalized anxiety disorder; asthma; left ankle cortical avulsion fracture to the lateral malleolus and tear of the anterior talofibular ligament; gastroparesis; and morbid obesity. AR 41.

At step three, the ALJ found that Plaintiff did not have an impairment, or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 43.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) with the following limitations:

> she can lift and carry, push and pull 20 pounds occasionally and 10 pounds frequently; can stand and walk for 6 hours of an 8-hour work day with standard

> breaks, with the use of a cane for walking; can sit for 6 hours of an 8-hour work day with standard breaks; can occasionally stoop, climb ramps and stairs, kneel, crawl, and crouch, and can never climb ladders, ropes, and scaffolds. She can never balance, as that term is used in the Department of Labor's Selected Characteristics of Occupations. She must never have concentrated exposure to extreme heat, extreme cold, humidity, pulmonary irritants, loud noises, and bright lights; can never operate a motor vehicle or heavy machinery; and must have no exposure to open heat sources, open water, unprotected heights, or dangerous, unprotected machinery. She can understand, remember, and carry out simple tasks, but not at assembly line rate; can make simple work-related decisions; can have occasional work-related interactions with co-workers and supervisors, and rare work-related interaction with the general public (defined as 5% or less of an 8-hour workday); and can have occasional changes in the work setting.

AR 46.

At step four, the ALJ found there was insufficient evidence about the claimant's past relevant work to make a finding but nevertheless proceed to step five as provided in 20 CFR 404.1520(h) and 416.920(h). AR 58.

At step five, in reliance on the VE's testimony, the ALJ concluded that Plaintiff could perform other jobs existing in significant numbers in the national economy. Specifically, the ALJ determined Plaintiff could perform work of a final assembler (DOT 713.687-018), which the vocational expert ("VE") testified had 18,000 jobs in the national economy; inspector (DOT 669.687-014), which the VE testified has 17,000 jobs in the national economy; and bonder machine tender (DOT 726.685-066), which the VE testified has 17,000 jobs in the national economy. (AR 58-59).

Accordingly, the ALJ concluded that Plaintiff was not disabled at any time since the alleged onset date of August 19, 2021. AR 25.

## V. <u>Issue Presented</u>

Plaintiff asserts one <u>argument</u>: "The ALJ's determination that Plaintiff is not disabled at step five of the sequential evaluation process [sic] because the ALJ based his determination upon unreliable Vocational Expert testimony regarding the jobs available in the national economy." MSJ

at 7, Doc. 16.[1]

**A. RFC & Step 5 , Generally**

Before proceeding to steps four and five, the ALJ must first determine the claimant's residual functional capacity. Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

At step five of the Commissioner's five-step sequential evaluation process, "the [*5] burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); see also Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015) (holding it is Commissioner's burden "to identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [her] identified limitations" (first alteration in original) (internal quotation marks omitted)). An ALJ's determination at step five involves "exploring two issues." Biestek v. Berryhill, 587 U.S. 97, 100, 139 S. Ct. 1148, 203 L. Ed. 2d 504 (2019). First, the ALJ must identify the types of occupations that a person with the claimant's limitations could perform. See id. Second, the ALJ must ascertain that such jobs exist in significant numbers in the national economy. See id. Both issues may require the assistance of a vocational

[1] Confusingly, Plaintiff's table of contents and initial statement of issues at the outset state "The ALJ's mental RFC determination is not supported by substantial evidence because the ALJ failed to fully develop the record, crafted an RFC out of whole cloth, and failed to properly account for moderate limitation in concentration, persistence and pace in the RFC." MSJ at 1. Yet the only issue addressed in the "argument" section (MSJ at 7) is the number of the jobs the VE identified at step 5, which Plaintiff contends conflicts with the job numbers from Job Browser Pro. Therefore, the mental RFC will not be addressed as it is wholly omitted from the argument. *See Greenwood v. Fed. Aviation Admin*., 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim.").

expert. See Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (describing the VE's role in providing job numbers); Osenbrock v. Apfel, 240 F.3d 1157, 1162-63 (9th Cir. 2001) (describing the VE's role in identifying suitable occupations).

A VE's testimony about job numbers must demonstrate that a "significant number" of jobs exist for the claimant in the national economy. The number of jobs available in the national economy can be calculated by aggregating the numbers for multiple occupations. 20 C.F.R. §§ 404.1566, 416.966. The Ninth Circuit has "never set out a bright-line rule for what constitutes a 'significant [*7] number' of jobs." Beltran v. Astrue, 700 F.3d 386, 389 (9th Cir. 2012). However, "work which exists in the national economy can be satisfied by work which exists in significant numbers either in the region where such individual lives or in several regions of the country." Gutierrez v. Commissioner of Social Sec., 740 F.3d 519, 528 (9th Cir. 2014) (emphasis in original) (internal quotations omitted); see also 42 U.S.C. § 423(d)(2)(A). If either number is significant, the ALJ's finding about job numbers must be upheld. See Beltran, 700 F.3d at 390.

**B. Analysis**

**1. Waiver**

Plaintiff disputes ALJ's determination concerning the number of jobs available in the national economy as to each of the three jobs the VE identified. Specifically, the VE identified the following jobs as well as the existing availability of each in the national economy: 1- Final assembler (DOT# 713.687-018) with approximately 18,000 jobs in the national economy; 2- inspector (DOT# 669.687-014) with approximately 17,000 jobs in the national economy; and, 3- bonder, machine tender (DOT# 726.685.066), with approximately 17,000 jobs in the national economy. AR 106. However, Plaintiff contends that according to Job Browser Pro the actual number of jobs available in the national economy as to each job is actually much lower: final assembler, 70 positions; inspector, 193 positions; and, bonder, machine tender, 13 positions.

Initially, Defendant contends that Plaintiff's claim of error has been waived. Defendant's argument follows:

> Meanel and Shaibi are dispositive here. Plaintiff – who was represented by counsel – did not contest the VE's job-number testimony or provide any rebuttal evidence at any point during her administrative proceedings. Because Plaintiff "did not even obliquely suggest that the VE's job estimates might be unreliable at any point during administrative proceedings," this claim "is therefore forfeited." Shaibi, 883 F.3d at 1110; see also Loupee v. O'Malley, No. 23-35150, 2024 WL 3842095, at *1 (9th Cir. Aug. 16, 2024) ("Loupee cannot challenge the ALJ's Step Five reliance on the job numbers provided by the [VE]. Loupee forfeited that challenge by not submitting evidence or argument in support of it at any point during the administrative proceedings.") (citing Shaibi, 883 F.3d at 1108-09 and Meanel, 172 F.3d at 1115)
>
> Resp. at 5.

Plaintiff replies as follows:

> Defendant's insistence that counsel for Plaintiff must raise an issue regarding job numbers <u>at a hearing</u> is unfounded and establishes an undue burden on Plaintiff during the step of the process where it is the ALJ's burden to establish jobs in the national economy. In order for a plaintiff to properly prepare and object to VE testimony, plaintiff's counsel would have to have the ability to somehow anticipate and read into the mind of the VE to know what jobs were going to be cited. That would somehow require the plaintiff to know what hypothetical questions were going to be asked and ultimately adopted.
>
> In essence, Defendant's position is requiring counsel for Plaintiff to have knowledge of the outcome of the case prior to the hearing and have statistical data and methodology available that could be presented during the hearing in order to raise this issue on appeal. Requiring Plaintiff's counsel to play "magic 8 ball" before every single hearing is overly burdensome. However, at step five of the sequential evaluation process, the ALJ has the burden to support his determination with substantial evidence. As Plaintiff has argued, the ALJ has failed to do so. Therefore, remand is warranted.
>
> Reply at 3–4 (emphasis added)

The law of waiver applicable to a Plaintiff's obligation to challenge a VE's job number follows:

In <u>Shaibi v. Berryhill</u>, the Ninth Circuit explained that "when a claimant fails <u>entirely</u> to challenge a vocational expert's job numbers <u>during administrative proceedings before the agency</u>, the claimant forfeits such a challenge on appeal, at least when that claimant is represented by

counsel." 883 F.3d 1102, 1109 (9th Cir. 2017), as amended (Feb. 28, 2018) (emphasis added). As the Ninth Circuit explained, a claimant may provide supplemental briefing, interrogatories, or other "new evidence casting doubt on a VE's job estimates" either to the ALJ or to the Appeals Council. Id. at 1110 (emphasis added). Social Security disability claimants must raise challenges to the accuracy of a VE's job number testimony "at some point during administrative proceedings to preserve the challenge on appeal in federal district court." White v. Kijakazi, 44 F.4th 828, 835 (9th Cir. 2022) (quoting Shaibi v. Berryhill, 883 F.3d 1102, 1103 (9th Cir. 2017)); see also Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999) (holding that a claimant's failure to raise an issue "at both her hearing before the ALJ and the Appeals Council" constitutes forfeiture).

Here, although counsel was not necessarily required to spontaneously object to the VE's identified job estimates during the administrative hearing, this did not excuse counsel from raising the issue by presenting this objection either to the ALJ or to the Appeals Council. By raising this issue for the first time on appeal to this Court, Plaintiff has waived her arguments regarding ALJ's step five analysis based on the VE's job numbers testimony.

Even assuming for the moment that Plaintiff did not waive her appeal, her claim still fails on its merits as explained below.

**2. Merits**

Plaintiff argues:

> Plaintiff's argument centers around the lack of reliability in the VE's testimony. Given the promulgation of new regulations which specifically require the VE to account for their methodology (SSR 24-3p), remand would be appropriate to obtain new VE testimony concerning the source of job numbers or whether or not significant numbers of jobs actually exist that can still be performed with Plaintiff's RFC. Here, is unclear how the VE arrived at the reported job numbers, nor did the ALJ inquire as to how those numbers were derived. This is outcome determinative because based upon current methodology widely accepted by the Social Security Administration (Job Browser Pro), the outcome of Plaintiff's case may have been different had the proper job numbers been identified. However, as it stands, the ALJ has not met his burden to show that there are a significant number of jobs she can perform. Therefore, Plaintiff requests this matter be remanded for further administrative proceedings.

Plaintiff explains:

> First, the position of final assembler (DOT# 713.687-018) was noted by the VE to have estimated job numbers of 18,000 in the national economy. T 59. However, Job Browser Pro, which compiles information from the U.S. Department of Labor and the Bureau of Labor Statistics, has indicated this position exists in the national economy with only 70 known positions.
>
> Regarding the job identified by the VE as "inspector," (DOT# 669.687-014), additional issues are noted. The DOT title for this particular code is that of a Dowel Inspector. Job Browser Pro indicates this job has approximately 193 positions, as opposed to the 17,000 positions identified by the VE .
>
> Likewise, the job of bonder machine tender (DOT# 726.685.066) was identified by the VE as having 17,000 jobs in the national economy. T 59. However, Job Browser Pro reveals a much lower number of only 13 positions in the national economy.

Plaintiff further explains:

> A closer look reveals the VE's testimony is not reliable and is not substantial evidence to support the ALJ's determination. See Ford v. Saul, 950 F.3d 1141, 1159 (9th Cir. 2020) (Noting that a DOT conflict can create an "indicia of unreliability in the expert's testimony"). Here, a closer look reveals there is a much lower number of jobs available than testified by the VE. Therefore, the ALJ should have inquired as to the source of the job numbers and resolved any conflicts in the VE testimony. See Orozco v. Kijakazi, 2022 WL 17844618 (9th Cir. Dec. 22, 2022).
>
> Under SSR 24-3p, the ALJs are no longer required to identify and resolve conflicts between VE testimony and the DOT. However, the ALJ adjudicated this case on December 5, 2023, well before effective date of SSR 24-3p. Therefore, SSR 00-4p still applies to this case and required the ALJ to identify and resolve apparent conflicts in the VE's testimony.
>
> MSJ at 9. (emphasis added).

Plaintiff argues that the ALJ erred in "blindly" relying on the VE's testimony. MSJ at 9. However, the Ninth Circuit has held that a VE's "recognized expertise provides the necessary foundation for his or her testimony' and 'no additional foundation is required." Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005). Plaintiff does not contest this principle.

Here, the VE confirmed that his testimony was consistent with information contained in the DOT, and for matters not addressed in the DOT, he relied on his 35 years of experience (AR 108). As the Court in Buck stated, the VE's testimony "is one type of job information that is regarded as

inherently reliable; thus, there is no need for an ALJ to assess its reliability." Buck v. Berryhill, 869 F.3d 1040, 1051 (9th Cir. 2017).

Additionally, Plaintiff's reliance on the Orozco case is unavailing. Plaintiff explained the applicability of Orozco as follows:

> Therefore, the ALJ should have inquired as to the source of the job numbers and resolved any conflicts in the VE testimony. See Orozco v. Kijakazi, 2022 WL 17844618 (9th Cir. Dec. 22, 2022) (where the vocational witness admits that her source for job numbers (here, Job Browser Pro) conflicts with the testimony, the ALJ must reconcile the conflict. Here, the vocational witness testified that production assembler (actually solderer) represented 71,000 jobs but JBP described less than 6,000 jobs. To allow the VW to inflate the number of jobs would permit the witness to pull the number out of a hat.).

MSJ at 9.

However, in contrast to Orozco, the VE here did not state that his source was the Job Brower Pro, rather that it was based on his 35 years of experience.

Defendant responds as follows:

> "The Ninth Circuit's decision in Wischmann v. Kijakazi disposes of Plaintiff's arguments on this issue. 68 F.4th 498 (9th Cir. 2023)". As Defendant explains: The Wischman Court concluded that the JBP printouts did not constitute probative evidence giving rise to a conflict that the ALJ was required to resolve. Id. at 506-09. In so finding, the Court pointed out that the claimant provided no information on how the numbers were produced, other than the name of the software program, which "is merely a tool that must be used appropriately to produce reliable results." Id. at 506–07.
>
> Here, Plaintiff's brief contains tables that she apparently cut and pasted from JBP, which purportedly show lower job numbers than the VE provided for the three occupations identified at Plaintiff's hearing (Br. at 10-11). Plaintiff's data excerpts suffer from the same deficiencies that the Ninth Circuit identified Wischmann: she provides no information on how the numbers were produced; she fails to establish that her alternative numbers were produced by someone with expertise in using JBP; and she provides no information to assist in interpreting these data tables (Br. at 10-11). See Wischmann, 68 F.4th at 506–08. Plaintiff's case is even more deficient because she did not question the VE regarding how he determined his job numbers, and there is no basis to find that her data excerpts were produced using the same program, queries, variables, or filters that the VE used.

The Court finds that Plaintiff has failed to show that her job-numbers evidence is significant and probative. See, e.g., Bogle v. O'Malley, 2024 U.S. App. LEXIS 27269, 2024 WL 4589072, at

*1 (9th Cir. 2024) ("Where . . . the claimant's inconsistent evidence is based on a different methodology, comes from a different data source, contains unexplained values, and was prepared by an attorney with 'no identified expertise' in vocational calculation, it is not probative."); Lloyd v. Kijakazi, 2023 U.S. App. LEXIS 15030, 2023 WL 4044415, at *1 (9th Cir. 2023) (holding plaintiff failed to present probative job-number evidence where her counsel's submissions did "not provide the context or explanations necessary to make her evidence a meaningful counter to the [VE's] detailed testimony" and "neither replicated the VE's methodology nor identified any expertise in calculating job figures in [*43] the national economy").

Accordingly, remand is not warranted based on the merits . See Wischmann, 68 F.4th at 506 ("[B]ecause the letter and attachments are not probative evidence, they do not give rise to the sort of inconsistency in the evidence that an ALJ is required to resolve . . . [and] there is no need to remand.").

Finally, Plaintiff cites Beltran v. Astrue, 700 F.3d 386, 390 (9th Cir. 2012). In Beltran, the Court determined that 1,680 nationwide jobs was insignificant, and/or 135 jobs in Greater Metropolitan Los Angeles and Orange County area also was not a significant number. However, because the Court here does not accept Plaintiff Job Browser Pro numbers and accepts those testified to by the VE , it is worth noting that a number of courts throughout the Ninth Circuit have concluded that 21,000 or fewer constitute a significant number of jobs in the national economy. See e.g., Elizabeth M. v. Saul, 2021 U.S. Dist. LEXIS 52412, 2021 WL 1060232, at *2 (C.D. Cal. Mar. 19, 2021) (holding 21,000 jobs is a significant number); Jeter v. Berryhill, 2018 U.S. Dist. LEXIS 77746, 2018 WL 2121831, at *3 (C.D. Cal. May 8, 2018) (holding 20,000 jobs is a significant number); Montalbo v. Colvin, 231 F. Supp. 3d 846, 863 (D. Haw. 2017) (holding *12,300* jobs is a significant number); Shaw v. Saul, 2020 U.S. Dist. LEXIS 267794, 2020 WL 13582509, at *6 (D. Ariz. Oct. 16, 2020) (holding that 20,797 constitutes a significant number of jobs);

Connolly v. Colvin, 2016 U.S. Dist. LEXIS 126667, 2016 WL 8730722, at *6 (E.D. Cal. Sept. 16, 2016) (holding *19,000* jobs is sufficient). (Emphasis added).

Accordingly, the court finds that the job numbers testified to by the VE all constitute a significant number of [*21] jobs existing in the national economy.

**VI. Conclusion**

Plaintiff, who was represented by counsel, waived/forfeited their argument concerning the VE's job data testimony by failing to raise it <u>during administrative proceedings.</u>

However, even had Plaintiff timely raised the argument, the argument still fails on its merits because Plaintiff failed to provide any probative evidence to challenge the inherently reliable job data provided by the VE. Moreover, the Job Browser Pro (JPB) data was not probative because Plaintiff provided only screenshots of raw JBP data with no explanation of its methodology, queries, variables, and filters used to cull the data, as explained in <u>Wischmann</u>.

Accordingly, there is no basis to find the VE's job estimates at step five, or the ALJ's acceptance thereof, was erroneous.

**VI. <u>Recommendations</u>**

For the reasons stated above, the undersigned recommends that the Court find that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled. The undersigned further recommends that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be denied, and that the Clerk of Court be directed to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff Rebecca Renae Westling

**VII. <u>Objections Due Within 14 Days</u>**

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14)

days after being served with these Findings and Recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **July 26, 2026** **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE